**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JENNIFER FIELD,<br><br>              Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>              Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:17-cv-01204-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Jennifer Field seeks review of the final decision of the Acting Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income under the Social Security Act. The Court has reviewed the record and considered the parties' arguments as presented in the briefing and at oral argument. Exercising jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), the Court affirms the Commissioner's final decision.

Ms. Field argues that the administrative law judge (ALJ) erred in three respects. First, she argues that the ALJ reversibly erred when he did not expressly weigh the opinion of her treating rheumatologist, Dr. Rasool. Second, she argues that the ALJ's reasons for discounting the opinion of her treating neurologist Dr. Schlagel were unsupported. And third, she argues that the ALJ should have found her disabled under Listing 14.10A for Sjögren syndrome. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.10A. The Court finds Ms. Field's arguments unpersuasive for the reasons discussed below.

1

## A. The ALJ's failure to weigh Dr. Rasool's opinion was harmless

In a form entitled "Sjögren's Syndrome Treating Physician Data Sheet," Ms. Field's long-time treating rheumatologist Dr. Rasool provided a very limited opinion regarding Ms. Field's Sjögren syndrome (Certified Administrative Transcript (Tr.) 574-81). Dr. Rasool declined to opine as to Ms. Field's functional limitations—he did not, for example, opine as to the amount of weight she could lift or carry; how long she could sit, stand, or walk; or any postural limitations she might experience (see Tr. 577-81). Instead, Dr. Rasool checked boxes indicating that Ms. Field's musculoskeletal, vision, digestive, and skin systems were involved in her Sjögren syndrome and that Ms. Field had constitutional symptoms or signs of intermittent severe fatigue and intermittent malaise (Tr. 575-76).

The ALJ discussed Dr. Rasool's opinion, noting that he "indicated that the claimant suffered from musculoskeletal, vision, digestive, and skin related issues because of her Sjögren's syndrome" and "that the claimant suffered from intermittent severe fatigue and malaise" (Tr. 22). The ALJ did not state what weight, if any, he was according Dr. Rasool's opinion. Nor did the ALJ give any reasons for discounting Dr. Rasool's opinion (see Tr. 22).

The Commissioner concedes that the ALJ erred when he did not weigh Dr. Rasool's opinion. However, the Commissioner asserts that this error was harmless. The Court agrees.

Ms. Field bears the burden of proving that the ALJ's omission was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations

2

omitted)). In the context of a Social Security disability case, an error is harmless if a court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, the Court can confidently say that no reasonable factfinder who applied the correct analysis for weighing medical opinion evidence could have resolved this matter any differently. The ALJ's omission of an express statement explaining the weight he was giving Dr. Rasool's opinion was therefore harmless in this case.

Dr. Rasool did not opine as to Ms. Field's functional limitations, which would be relevant to the ALJ's assessment of Ms. Field's residual functional capacity, or RFC. Dr. Rasool checked boxes indicating that Ms. Field experienced symptoms of intermittent severe fatigue and intermittent malaise (Tr. 576). Even if the ALJ had given controlling weight to Dr. Rasool's opinion, the outcome of this case would not change. See Sanders, 556 U.S. at 408-09 (rejecting a legal framework that would "prevent the reviewing court from directly asking the harmless-error question," and that would justify "reversing for error regardless of its effect on the judgment" (citation and internal quotes omitted)). Dr. Rasool's opinion does not on its face conflict with the ALJ's finding that Ms. Field had the RFC to perform a range of light work. He opined that, on an "intermittent" basis, Ms. Field experienced both "a frequent sense of exhaustion" and "frequent feelings of illness, bodily discomfort, or lack of well-being" (Tr. 576). Without parsing how frequent "intermittent[ly] frequent" may be, Dr. Rasool did not indicate that these intermittent symptoms would result in any absenteeism or functional limitations inconsistent with the ALJ's RFC analysis. Indeed, when given the opportunity to opine

3

as to Ms. Field's functional limitations, the doctor demurred (Tr. 577-81; see Tr. 581 ("Answered Questions 1-6 only")). Thus, giving more weight to Dr. Rasool's opinion would not alter the outcome of this case. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (finding the ALJ did not reversibly err in weighing a medical source opinion "because giving greater weight to [the doctor's] opinion would not have helped her").

**B.     The ALJ Gave Good Reasons to Discount the Opinion of Treating Neurologist Dr. Schlagel**

Ms. Field's treating neurologist Dr. Schlagel completed a "Treating Source Statement of Physical Limitations" indicating that Ms. Field experienced severe functional limitations (Tr. 804-05). Dr. Schlagel opined, for example, that Ms. Field could lift no more than 10 pounds, could stand or walk less than two hours total in an eight-hour workday, and could sit no more than two hours in a workday (Tr. 804). She further opined that Ms. Field would be off task five to ten percent of a workday, would miss four days or more of work per month due to her impairments (or treatment for her impairments), and was less than 50 percent as efficient as an average worker (Tr. 805).

The ALJ discussed Dr. Schlagel's opinion but ultimately gave it little weight (Tr. 23). The ALJ found that the opinion was not consistent with the generally conservative treatment of Ms. Field's impairments and was inconsistent with Ms. Field's repeated reports of doing well on medication (Tr. 23). The Court has reviewed the record and finds that substantial evidence supports the ALJ's conclusion. Ms. Field's treating physicians described her treatment as "conservative" (see Tr. 637 (Dr. Rasool noted that he was continuing "[c]onservative measures for dry eyes and dry mouth"), 644 (Dr. Rasool wrote that, "[a]ccording to patient[,] conservative measures [had] been

4

helping with [Sjögren] symptoms.")). See 20 C.F.R. § 404.1527(c)(4) (requiring an ALJ to consider whether an opinion is consistent with the record as a whole).

And as the ALJ correctly stated, Ms. Field often reported doing well while taking her medication as prescribed. She noted the efficacy of her Sjögren treatment (see Tr. 410 ("According to the patient she has been relatively good . . . Overall, she has been doing relatively okay . . ."), 529 ("She has been doing well."), 644 ("conservative measures [have] been helping with [Sjögren] symptoms."), 652 ("she . . . is feeling from a Sjogren standpoint fairly well"), 655 ("[s]he is overall doing good on hydroxychloroquine")). Ms. Field also reported that pain medications significantly reduced her osteoarthritis symptoms (see Tr. 410 ("she is requesting the renewal [of oxycodone] and according to the patient that helps with the pain"), 647 (reporting that she had not needed pain medications for three months), 651 (reporting that medications reduced her pain from 9/10 to 5/10), 662 ("pain controlled with pain medication")).

The Court recognizes that there is also some evidence in Dr. Schlagel's notes that could support a finding of disability. But where—as here—some evidence supports a finding of disability and other evidence supports a finding of non-disability, the Court must defer to the ALJ as factfinder under the highly-deferential standard of review. See Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies . . . and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so." (citing Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that the ALJ is entitled to resolve any conflicts in the record))).

**C. Ms. Field Cannot Argue That the ALJ Reversibly Erred in his Consideration of the Listings After her Attorney Told the ALJ That she did not Allege That she met a Listing**

In her pre-hearing brief to the ALJ, Ms. Field's attorney explicitly stated that she "**does not** allege that her impairments meet any of the listings" (Tr. 335 (emphasis added)). Yet Ms. Field now asks the Court to remand this matter for further proceedings because, she alleges, the ALJ did not sufficiently articulate why she did not meet Listing 14.10A for Sjögren syndrome. The Court finds that Ms. Field's argument about the Listings is precluded by the invited-error doctrine.

"The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." United States v. Jereb, 882 F.3d 1325, 1338 (10th Cir. 2018) (citation omitted)). The doctrine is "based on reliance interests similar to those that support the doctrines of equitable and promissory estoppel." Id. (citation omitted). The doctrine is applicable to Social Security disability cases when the claimant's attorney stipulates to a finding at the administrative level (i.e., before the ALJ), then argues before the district court that the ALJ erred when he made that same finding. See Tracy v. Astrue, 518 F. Supp. 2d 1291, 1305 (D. Kan. 2007). In Tracy, as here, "the attorney clearly and unambiguously asserted to the ALJ that he did not believe that his client met a listing." Id. This Court agrees with the court in Tracy that "the doctrine of invited error bars the plaintiff from raising this issue on appeal." Id. Thus, Ms. Field's argument that the ALJ should have provided further consideration to whether she met Listing 14.10A is barred.

DATED this 22d day of February, 2019.

BY THE COURT:

*Evelyn J. Furse*
Evelyn J. Furse
United States Magistrate Judge